# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1160 | **DATE** | APRIL 26, 2000 |
| **CASE TITLE** | Michael J. Peter v Stone Park Enterprises | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 6/1/00, at 9:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Enter memorandum opinion and order dated 4/24/00. Accordingly, counterdefendant Peter's motioin to dismiss count I is granted and motion to dismiss counts II and III is denied. Counterplaintiff Stone Park is directed to file a second amended counterclaim by 5/16/00. Peter's answer thereto is due by 5/31/00.

(11) X [For further detail see orders attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | APR 27 2000 | |
| | Notified counsel by telephone. | | date docketed | 70 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | | GDS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL J. PETER,               )
                                )
        Plaintiff,              )
                                )  No.   98 C 1160
    v.                          )
                                )  Judge Robert W. Gettleman
STONE PARK ENTERPRISES, L.L.C., et al., )
                                )
        Defendants.             )
                                )
_____)
                                )
STONE PARK ENTERPRISES, L.L.C., )
                                )
        Counterplaintiff,       )
                                )                                    DOCKETED
    v.                          )
                                )                                    APR 27 2000
MICHAEL J. PETER,               )
                                )
        Counterdefendant.       )

## MEMORANDUM OPINION AND ORDER

Defendant/counterplaintiff Stone Park Enterprises, L.L.C. ("Stone Park") has filed an amended counterclaim against plaintiff/counterdefendant Michael J. Peter ("Peter"), alleging: (1) fraud in the inducement and requesting a writ of recission (Count I); (2) common law fraud (Count II); and (3) a violation of the Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/2 (Count III). On July 23, 1999, the court granted Peter's motion to dismiss Stone Park's original counterclaim. Peter v. Stone Park Enterprises, L.L.C., 1999 WL 543210 (N.D. Ill. July 23, 1999). Stone Park has amended its counterclaim consistent with that opinion, and Peter has filed a motion to dismiss the amended counterclaim.

## FACTS

As discussed in the court's earlier opinion, plaintiff is a nightclub promoter who puts on Las Vegas-style revues at adult clubs identified by the moniker "Thee Dollhouse." Stone Park alleges in its counterclaim that, at a meeting in Raleigh, North Carolina in late 1996 or early 1997, Peter proposed to Stone Park's agent, Michael Annecca ("Annecca"), that he would license the name "Thee Dollhouse" to Stone Park and that, through a separate but related agreement, "his company" would provide the consulting services necessary to operate and manage Stone Park's nightclub. According to Stone Park, Peter explained that this two-pronged arrangement was necessary because a plea agreement he had entered into in a criminal case in Florida constrained him from personally participating in the ownership, management, or operation of a business which derived income from the sale of alcohol.[1]

Stone Park alleges that Annecca understood from Peter's representations that Peter would arrange for Stone Park to enter into a consulting agreement with a company for which Peter was an agent, so that Peter would be able to help Stone Park operate and manage its nightclub under the guise of a separate entity. Stone Park attaches to the complaint a letter Peter sent Annecca, dated December 17, 1996, in which Peter explained the restrictions his plea agreement placed upon him and continued: "I must receive a consulting fee that can facilitate built in 'bonuses' for the performance on the consulting side and a flat rate for licensing the trademark."

---

[1] Although Peter attempts to dispute this allegation by referring to the text of the plea agreement, Stone Park does not allege that the plea agreement, by its terms, restricted him in this way, but rather alleges that Peter told Annecca that his plea agreement prevented Peter from engaging in certain behavior. For the purposes of a motion to dismiss, the court must accept this proposition as true.

2

A brochure entitled "Why Choose Us?" accompanied the letter and contained a number of representations about the market presence of "Thee Dollhouse." Stone Park also alleges that Peter made a number of representations at the Raleigh meeting. According to Stone Park, Peter represented at the meeting that he possessed the experience and expertise to operate and manage Stone Park's nightclub by: scheduling dancers; hiring and firing personnel; training staff; planning and organizing promotions; handling public relations issues; maintaining inventory of merchandise and liquor; and furnishing experienced personnel from his other clubs to manage and operate Stone Park's facility. Stone Park alleges that it agreed to enter into the two-pronged agreement in reliance on these representations

Soon after Stone Park agreed to enter into the two-pronged arrangement, it received a written consulting agreement ("the Consulting Agreement") in which a company called Adult World Management ("AWM") agreed to furnish the management and operation services that Peter had promised to provide in both the brochure and in the December 17, 1996, letter. Stone Park alleges that AWM is a corporation engaged in the adult nightclub business and that AWM's sole shareholder, Laird Boles ("Boles"), is a long-time business associate of Peter.

According to Stone Park, Peter's representations in the brochure and the letter led Stone Park to believe, upon receipt of the Consulting Agreement, that Peter was an agent for AWM. Stone Park alleges that it would not have entered into the License Agreement if it had not also received the Consulting Agreement, and states that Peter's status as an agent for AWM was the most important factor in Stone Park's decision to enter into both agreements. Both the License Agreement and the Consulting Agreement are dated February 26, 1997. As the court mentioned

in its earlier opinion, Boles signed the Consulting Agreement himself and signed Peter's name to the License Agreement.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. See Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

### I. Recission Claim

Peter moves to dismiss Count I, Stone Park's recission claim, as untimely. "A court of equity may grant the remedy of rescission where there has been some fraud in the making of a contract, such as an untrue statement or the concealment of a material fact." Puskar v. Hughes, 533 N.E.2d 962, 966 (Ill. App. Ct. 1989). Under Illinois law, which applies in this diversity action, "a victim of contract fraud who wishes to rescind that contract must not only announce his or her election promptly but must act on that intention with promptness." Swartz v. Schaub, 826 F. Supp. 274, 277 (N.D. Ill. 1993) (quoting Kanter v. Ksander, 176 N.E. 289, 291 (Ill. 1931)). "The natural reaction of a person who has been defrauded is to cry out in protest and to move with alacrity in seeking redress. When he does neither, his claim and his motives are suspect." Schoenbrod v. Rosenthal, 183 N.E.2d 188, 192 (Ill. App. Ct. 1962). Peter contends

4

that Stone Park did not seek recission until two and a half years after the alleged fraud. Stone Park argues that because it abandoned Peter's trademark and changed its name in December 1998, it disaffirmed the License Agreement on that date, not on November 1999, the date it sought recission in its counterclaim.

Even accepting Stone Park's contention that it did not discover the alleged fraud until shortly before December 1998, eleven months elapsed until November 1999, the date Stone Park actually filed the counterclaim requesting recission. This eleven month lapse is not irrelevant, as Stone Park argues. The operative date is not the date Stone Park repudiated the contract, but the date Stone Park actually brought a claim requesting recission. See, e.g., Schwarz, 826 F. Supp. at 278 ("[I]t is not enough under Illinois law simply to say that you are ready to bring suit for rescission—instead you must act on that kind of statement and do it promptly."). Under Illinois law, a lapse of eleven months is unreasonable as a matter of law. As Judge Shadur has noted, "the seminal decision in Kanter itself refused rescissionary relief due to plaintiff's delay of less than 11 months, while much more recently an elapsed period of six months between the date of discovery of the alleged fraud and the assertion of a rescission claim in litigation caused the rejection of that claim in Madison Assoc. v. Bass, 158 Ill. App. 3d 526, 540, 110 Ill. Dec. 513, 523, 511 N.E.2d 690, 700 (1st Dist. 1987)." Id. at 277 (dismissing a plaintiff's recission claim because he had not filed it until nine months after he learned of the alleged fraud). Defendant's motion to dismiss plaintiff's recission claim as untimely is therefore granted.

**II. Fraud Claim**

Peter argues in his motion to dismiss that Stone Park's fraud allegations in its amended counterclaim suffer from the same deficiencies as the fraud count in the original counterclaim.

5

Peter contends that Stone Park does not properly allege that Peter was AWM's agent for the purposes of the Consulting Agreement, and that Stone Park therefore cannot allege that it entered into the Consulting Agreement in justifiable reliance on Peter's representations.

**A. Agency**

In its July 23, 1999, opinion, the court dismissed Stone Park's counterclaim to the degree that it rested on the Consulting Agreement, holding that Stone Park had not properly alleged that Peter was a party to the Consulting Agreement Stone Park had entered into with AWM. In its original counterclaim, Stone Park had vaguely alleged that AWM "on information and belief, is silently owned or otherwise under the control of Peter." Stone Park did not allege a business connection between Boles and Peter and did not allege that Peter was an agent for AWM.

As discussed in the facts section, Stone Park has clarified and expanded upon its allegations in its amended counterclaim. Peter nonetheless argues that Stone Park has not sufficiently alleged that Peter was AWM's agent. Peter cites Karpowicz v. General Motors Corp., 1997 WL 413929 (N.D. Ill. July 18, 1997), for the proposition that "it is insufficient to merely plead the legal conclusion of agency." Id. at *4 (quoting Connick v. Suzuki Motor Co., 675 N.E.2d 584, 592 (Ill. 1996)). As Judge Kennelly held in Kent v. Celozzi-Ettleson Chevrolet, Inc., 1999 WL 1021044 (N.D. Ill. Nov. 3, 1999), however, parties in federal court should not be held to the stricter pleading standard applied in Karpowicz. As a federal court sitting in diversity, this court is not bound by the fact pleading requirements of the Illinois courts. Rather, this court follows the notice pleading regime embedded in Fed. R. Civ. P. 8.

Peter is correct that in Lachmund v. ADM Investor Services, Inc., 191 F.3d 777 (7th Cir. 1999), the Seventh Circuit held that, "when the plaintiff relies upon the same circumstances to

6

establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim." Id. at 783. In the instant case, Stone Park alleges an agency relationship between Peter and AWM by alleging a series of discussions and communications that led up to the signing of the two agreements. Stone Park's allegations are particular enough to show that when Stone Park was presented with the Consulting Agreement, it believed that AWM had vested authority in Peter to promise to deliver management services and to negotiate the terms of the agreement. The court therefore concludes that Stone Park has alleged agency with sufficient particularity to survive a Rule 12(b)(6) motion to dismiss.[2]

**B. Justifiable Reliance**

Peter also moves to dismiss Stone Park's fraud claim by arguing that Stone Park cannot allege justifiable reliance. As an initial matter, Peter contends that justifiable reliance must be pled with particularity under Rule 9(b). Peter does not cite any caselaw in support of this proposition. Instead, Peter cites the Illinois Appellate Court's statement, repeated by this court in its previous opinion, that "[a] party pleading fraud must allege facts sufficient to establish that its reliance on the alleged misrepresentations was justified." Barille v. Sears Roebuck & Co., 682 N.E.2d 118, 123 (Ill. App. Ct. 1997). Peter also cites a similar statement quoted by this court in

---

[2]Although Peter attempts to argue that Stone Park must plead whether Peter was acting under express, implied, or apparent authority, Peter has not provided a single case that requires a party to plead an agency theory with particularity. Stone Park is not attempting to hold Peter vicariously liable, but is instead attempting to hold him liable for his own allegedly fraudulent actions, committed while he was acting as AWM's agent. "It is well established that agents will be liable for their own unlawful conduct," whether or not their actions were at the behest of the principal. Jeanty v. McKey & Poague, Inc., 496 F.2d 1119, 1120-21 (7th Cir. 1974).

7

its opinion in Nardine v. Canepa, 1995 WL 613136, at *3 (N.D. Ill. Oct. 17, 1995) (quoting Adler v. William Blair & Co., 648 N.E.2d 226, 232 (Ill. App. Ct. 1995)). These quotations should not be taken out of context to imply that this court holds parties to state law fact-pleading requirements.[3]

In its ruling on Stone Park's original counterclaim, the court held that Stone Park could not allege that it justifiably relied on Peter's representations that he could provide Stone Park with resources, such as managers and entertainers. See Peter, 1999 WL 543210, at *5. This ruling rested on the fact that Stone Park had not alleged that Peter was involved in the Consulting Agreement, and on the fact that Peter specifically disclaimed in the License Agreement (the only contract with which the original counterclaim connected Peter) that he would help operate the nightclub. Because Stone Park alleges in its amended counterclaim that Peter was AWM's agent, Stone Park can allege that it signed the Consulting Agreement in justifiable reliance on Peter's earlier representations to provide resources and management assistance.

Peter also argues that Stone Park's counterclaim does not satisfy Rule 9(b) because Stone Park has failed to clarify which alleged misrepresentations it relied on. In paragraph 16 of its counterclaim, however, Stone Park clearly states that it entered into both the License Agreement and the Consulting Agreement in reliance on the representations Peter had made to Annecca at

---

[3]This court's earlier ruling that Stone Park could not establish justifiable reliance rested on the fact that in the License Agreement, Peter expressly disclaimed any responsibility for helping Stone Park operate its nightclub. See Peter, 1999 WL 543210, at *5. Similarly, this court held in Nardine that the plaintiffs could not establish justifiable reliance because they had signed a letter agreeing that they were not relying on the representations at issue in that case. In both Peter and Nardine, the court held that documents attached to the complaint prevented the pleading party from alleging that it had a right to rely. The court did not hold the parties in either case to heightened state court pleading requirements.

8

the Raleigh meeting (recited in detail in paragraphs 10-13), the representations in the December 17, 1996, letter (recited in paragraph 14), and the representations in the brochure, "Why Choose Us?" (enumerated in paragraph 15). Stone Park alleges in Count I that the representations in paragraphs 10-14 were false and that Peter made these representations knowing they were false.[4] Stone Park has sufficiently clarified its pleading in accordance with the court's directions in its July 23, 1999, order. Peter's motion to dismiss Count II for failure to allege justifiable reliance and failure to plead fraud with particularity is therefore denied. Because the court has dismissed Count I, however, plaintiff should amend Count II of its complaint to include its allegations about the specific representations it alleges were false.

### III. Illinois Franchise Disclosure Act Claim

Peter also moves to dismiss Count III, plaintiff's IFDA claim. In its previous opinion, the court discussed the three elements that must be present for a franchise relationship to exist. A franchise is a written or oral agreement under which: (1) the franchisee "is granted the right to engage in the business of offering, selling or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor"; (2) the operation of the franchisee's business is "substantially associated with the franchisor's trademark," and (3) the franchisee is required to pay a franchise fee of $500 or more. 815 ILCS 705/3. In its amended counterclaim, Stone Park (rather inartfully) alleges that through the License Agreement and the Consulting Agreement, Peter prescribed a marketing plan under which Stone Park would sell and

---

[4] The court notes that nowhere in the complaint does Stone Park allege that the representations in the brochure, discussed in paragraph 15, were false.

9

distribute goods and services at its nightclub. In exchange, Stone Park alleges, Stone Park was required to pay Peter a franchise fee of $3,000 per week.

In its earlier opinion, the court held that Stone Park could not allege that the fee it paid Peter was a franchise fee because the only fee Stone Park allegedly paid was under the Consulting Agreement, and Stone Park had not alleged that Peter was a party to this agreement. Because Stone Park has sufficiently alleged in its amended counterclaim that Peter was AWM's agent, Stone Park can allege that Peter/AWM was the franchisor and that the fee Stone Park paid Peter constituted a franchise fee. The court agrees with Peter that Stone Park's allegations follow a rather tortured logic. Once again, however, the court measures plaintiff's amended counterclaim against the generous standards of notice pleading. If Peter is correct, Stone Park may not survive summary judgment, but Stone Park has stated a claim under the IFDA sufficient to survive a motion to dismiss. Peter's motion to dismiss Count III is therefore denied.

## CONCLUSION

Peter's motion to dismiss Count I (seeking recission) as untimely is granted. The court denies Peter's motion to dismiss Counts II and III. Stone Park is directed to file a second amended counterclaim in accordance with this opinion on or before May 16, 2000. Peter should file his answer to the second amended counterclaim on or before May 31, 2000. This matter is set for a report on status June 1, 2000, at 9:00 a.m., at which time the court will set a final discovery cutoff date and a pretrial schedule.

**ENTER:** **April 24, 2000**

Robert W. Gettleman
**United States District Judge**